UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    MARLENE ROSE NEMES,                       Case No. 15-20332-dob
                                                          Chapter 13 Proceeding
          Debtor.                                          Hon. Daniel S. Opperman
_____/
MICHIGAN UNEMPLOYMENT INSURANCE
AGENCY,
      Plaintiff,

v.                                                                 Adversary Proceeding
                                                                   Case No. 15-02047-dob
MARLENE ROSE NEMES,
      Defendant.
_____/

## OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

### Facts

Between December 10, 2010 and January 29, 2010, Marlene Nemes (the "Defendant"), collected approximately $1,745 in unemployment benefits from the State of Michigan Unemployment Insurance Agency (the "Agency"), despite being gainfully employed. The Agency issued a "determination" to Defendant regarding the overpayments on June 13, 2012. The determination stated that Defendant owed $1,745 in restitution for the overpayments and $6,216 in statutory penalties imposed because, the Agency found, Defendant committed fraud when she accepted the overpayments.[1]

Defendant had thirty days to appeal the determination under the Agency's administrative

---

[1] The Agency is always entitled to recover improperly paid benefits pursuant to M.C.L. § 421.62. The statutory penalty may only be imposed on a claimant who "makes a false statement . . . knowing it to be false, or knowingly and willfully with intent to defraud fails to disclose a material fact to obtain or increase an [unemployment] benefit," pursuant to M.C.L. § 421.54(b).

1

procedures. She faxed a letter to the Agency on August 1, 2012, asking it to reduce her debt. The Agency notified Defendant that her appeal was untimely, and told her how she could pursue a late appeal. Defendant, unrepresented by counsel, did not to do so.

Defendant filed for Chapter 13 relief on February 23, 2015. Her Chapter 13 Plan, confirmed on April 24, 2015, provides for a minimum of 48 months of payment, with monthly payments of $335 for the first six months and $590 for the remaining 42 months.

The Agency filed a Complaint to Determine Dischargeability of Debt and for Judgment on May 13, 2015, contending that the restitution and statutory penalties are nondischargeable under 11 U.S.C. § 523(a)(2)(A) ("false pretenses, a false representation, or actual fraud") and (a)(7) (non-compensatory penalty owed to government unit). The Complaint seeks a total of $7,928.09 relating to the benefit overpayments including interest, plus $350.00 in court costs.

Defendant filed a Motion for Summary Judgment on August 6. The Agency responded on August 20, and then filed its own Motion for Summary Judgment on October 12.

Judge Randon's Order in *In re Andrews*

The issues raised in these motions concerning the statutory penalties are addressed in a recently issued order by Judge Randon in *In re Andrews*.[2] Judge Randon's decision is currently on

---

[2] The Order Conditionally Granting Defendant's Motion to Dismiss can be found at docket # 12 in Adversary Proceeding Case No. 15-04724 (Chapter 13 Case No. 15-46058). In *Andrews*, the Agency filed a nondischargeability action against a Chapter 13 debtor relating to unemployment benefit overpayments. The debtor received $6,897 in overpayments and the Agency levied statutory penalty over $34,000. The Agency argued that both the restitution for the overpayments and the statutory penalty were nondischargeable under § 523(a)(2).

Judge Randon determined that 1) these penalties fall within the ambit of § 523(a)(7), and thus are conditionally dischargeable in Chapter 13 under § 1328(a); and 2) the penalties are not rendered nondischargeable by § 523(a)(2) even if they are imposed as a result of the debtor's fraudulent conduct.

appeal in the United States District Court for the Eastern District of Michigan.[3] At the hearing on the motions before this Court, counsel for the Agency indicated that unless it receives a complete reversal of Judge Randon's decision in the district court, it will appeal to the Sixth Circuit. As result, this Court will hold in abeyance all issues relating to the statutory penalties pending resolution of the Andrews case.

This leaves the issues concerning the restitution, which are not affected by the *Andrews* decision. The parties do not dispute the amount of the restitution, $1,745, nor do they dispute that § 523(a)(2)(A) ("false pretenses, a false representation, or actual fraud") is the provision of the Bankruptcy Code that the Court should apply to determine whether the restitution is dischargeable.[4] The only issues are whether Defendant is precluded from now arguing that she did not obtain the benefits fraudulently due to her failure to appeal the Agency's administrative determination, and if not, whether the undisputed facts nevertheless establish that Defendant's actions in accepting the unemployment benefits constitute fraud.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because the issues relate to the dischargeability of particular debts.

The issues in this adversary proceeding arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, --- U.S. ---, 131 S. Ct. 2594, 2608, 180 L. Ed. 2d 475 (2011),

---

[3] District Court Case No. 15-cv-13681

[4] This is the only subsection of § 523(a) that the Agency pled in its Complaint.

3

and later in *Executive Benefits Ins. Agency v. Arkison*, --- U.S. ---, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

Most recently, the United States Supreme Court has determined that so long as the parties knowingly and voluntarily consent, Article III allows bankruptcy courts to adjudicate certain claims. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015).

The parties do not dispute the Court's jurisdiction and agree that this matter is a core proceeding.

## APPLICABLE LAW

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(a) provides that summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "A 'genuine' issue is one where no reasonable fact finder could return a judgment in favor of the non-moving party." *Chudzinski v. Hanif* (*In re Hanif*), 530 B.R. 655, 663 (Bankr. E.D. Mich. 2015) (quoting *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

The burden shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991). The non-moving party

4

"'must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted.'" *Chudzinski*, 530 B.R. at 663 (quoting *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 149–50 (6th Cir. 1995)).

B.  11 U.S.C. § 523(a)(2)(A)

Section 1328(a) of the Bankruptcy Code exempts from discharge debts covered by Section 523(a)(2) in a Chapter 13 case. Section 523(a)(2)(A) debts are defined as debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 280 (6th Cir. 1998) (citations and footnote omitted). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

The purpose of Section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *In re Omegas Group, Inc.*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the Court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to the debtor. *Rembert,* 141 F.3d at 281.

5

The only *Rembert* element Defendant contests is the second element, intent to deceive. She asserts that she "made a mistake" in requesting and accepting unemployment benefits while she was employed, and that as a result, she lacked the requisite intent (or at least there are disputed facts regarding her intent). The Agency argues that Defendant is precluded from "re-litigating" the intent issue because she failed to appeal the Agency's June 2012 administrative determination. Even if she is not, the Agency argues, the undisputed facts establish Defendant's intent to deceive.

As explained below, the Court agrees with Defendant. Her failure to appeal the Agency's administrative determination does not preclude her from litigating the intent issue in this nondischargeability action. Furthermore, there are disputed facts concerning Defendant's intent to deceive.

## DISCUSSION

### C. Defendant is Not Precluded from Re-litigating the Fraud Issue

While collateral estoppel is applicable in bankruptcy dischargeability proceedings, *see Grogan*, 498 U.S. at 284, a bankruptcy court must determine whether applicable state law would give collateral estoppel effect to the state court decision. *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997).

Furthermore, in Michigan,

> when the rendering forum is an administrative agency, the general principles of collateral estoppel are to be applied only when the procedures are adjudicatory in nature, when a method of appeal is provided, and when it is clear that the Legislature intended to make the determination final in the absence of an appeal.

*Storey v. Meijer, Inc.*, 429 N.W.2d 169, 171-72 (Mich. 1988). The United States Supreme Court has held that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the

6

courts have not hesitated to apply [principles of preclusion] to enforce repose." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (quotation omitted).

Judge Shapero has previously held that administrative determinations by the Michigan Unemployment Agency are not entitled to preclusive effect in bankruptcy nondischargeability proceedings, in *Michigan Unemployment Insurance Agency v. Turner* (*In re Turner*), Adv. P. No. 09-53722, Ch. 7 Case No. 09-53772 (Bankr. E.D. Mich. March 5, 2010) (Opinion Regarding Plaintiff's Motion for Summary Judgment, Adv. P. docket # 40). In *Turner*, the Court found that the Agency's determination regarding restitution and penalties "did not involve a hearing for which Turner was given prior notice and an opportunity to appear. It was, in effect, an intra-agency administrative determination; [the debtor's] sole right with regard to which was to appeal it within 30 days . . . of receiving notice." *Id.* at 4. The *Turner* Court went on to conclude that, because the debtor was not given a pre-determination notice or opportunity to appear, "it cannot fairly be said that the Michigan Unemployment Insurance Agency was acting in a judicial capacity. . . . [S]he was never given the opportunity to contest or litigate the factual determinations upon which the [determination] was based prior to the same being issued." *Id.* at 4-5.

*Turner* also distinguished the facts from *Roman Cleanser Co. v. Murphy*, 194 N.W.2d 704 (Mich. 1972), one of two cases the Agency cites in its Motion for Summary Judgment currently before this Court. The Agency does not discuss or distinguish *Turner* from the case at bar.

The Court agrees with *Turner* and concludes that Defendant is not precluded from litigating the fraud issue in this nondischargeability action based on her failure to file an appeal of the Agency's administrative decision. Like the debtor in *Turner*, Defendant was not given an opportunity to appear and contest the Agency's findings prior to the issuance of the determination.

7

The only "notice" she received was a letter informing her that "[i]nformation recently received indicates that you may have intentionally misled [the Agency]" regarding benefit payments, and inviting her to respond to a series of questions by mail. She responded to the letter, stating that she had made a mistake in requesting and receiving the unemployment benefits, but the Agency nevertheless issued its "determination," which states that "[y]our actions are considered to have been intentional because you failed to disclose a material fact to obtain or increase your benefits."[5] Her effort to appeal that determination was deemed untimely and that was the end of the process. Defendant was unrepresented by counsel throughout that time. Under these circumstances, and in light of *Turner*, the Court finds Defendant is not collaterally estopped from litigating the fraud issue in this Court.

### D. There are Disputed Facts Concerning Defendant's Intent to Deceive the Agency

Having determined Defendant is not precluded from litigating the intent issue in this nondischargeability action, the Court will now address the Agency's argument that it is entitled to summary judgment because the undisputed facts establish Defendant's intent to deceive.

Under *Rembert*, intent is measured subjectively. 141 F.3d at 281. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick* (*In re Patrick*), 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). "Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test." *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)

---

[5]Furthermore, the Court notes, it is unclear whether this finding even meets the standard of "intent to deceive" under § 523(a)(2)(A) and *Rembert*.

8

(citations omitted). A debtor's fraudulent intent:

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances "presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor." The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire* (*In re McGuire*), 284 B.R. 481, 492 (Bankr. D. Col. 2002) (quoting *Groetken v. Davis* (*In re Davis*), 246 B.R. 646, 652 (10th Cir. BAP 2000) (citations omitted)). "A creditor can present proof of surrounding circumstances from which a [c]ourt can infer a dishonest intent." *Commercial Bank & Trust Co. v. McCoy* (*In re McCoy*), 269 B.R. 193, 199 (Bankr. W.D. Tenn. 2001).

As explained by the court in *Haney v. Copeland* (*In re Copeland*):

> Proving the Debtor's intent to defraud is similar to proving the Debtor's knowledge and/or recklessness as to the falsity of the representations made. Because intent is a purely subjective question, the court must examine the totality of the Debtor's actions to determine if she possessed the requisite intent to deceive the Plaintiffs. Any benefit of the doubt must be resolved in favor of the Debtor, as § 523(a)(2) is strictly construed in her favor. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir. 1994).

291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003).

The Agency argues that "Defendant's intent can be inferred from the circumstances." It further argues:

> In order to obtain unemployment benefits, Defendant must certify to the Agency whether she received any income. This is the only way she could become eligible to receive benefits. If she answered one way, she would not receive benefits. The only reasonable purpose in certifying that she did not receive income would be to qualify for unemployment benefits.

However, at the hearing on these cross-motions for summary judgment, counsel for the Agency conceded that an unemployment claimant could start work but experience a delay in actually

9

receiving wages due to the pay cycle, in which case the person would not necessarily intend to defraud the Agency, at least for the period before the person begins to receive wages. Of course, this delay would likely not be longer than one or two weeks.

Defendant asserts that she made a "mistake" in accepting the benefits while employed. Neither her briefs nor her documented exchanges with the Agency reveal the nature of her mistake. It could have been partially due to the timing of her employer's pay period, her belief she was entitled to reduced benefits, or any subjective mistake. The Court needs more facts to be able to evaluate the totality of the circumstances regarding Defendant's state of mind when she requested unemployment benefits. Given the high standard for establishing intent under § 523(a)(2), and the rule that "[a]ny benefit of the doubt must be resolved in favor of the debtor," *Copeland*, 291 B.R. at 766, the Court must deny the Agency's request for summary judgment on this issue. The Agency simply failed to carry its initial burden of establishing there is no genuine issue of material fact. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

## CONCLUSION

The Court concludes Defendant is not precluded from litigating the fraud issue in this nondischargeability action. The Court further concludes there are material facts in dispute concerning Defendant's intent to deceive the Agency. The Agency's Motion for Summary Judgment is therefore denied in part. All other issues raised in the Agency's Motion are held in abeyance, as is Defendant's Motion for Summary Judgment, pending resolution of *In re Andrews*, discussed above. Counsel for Defendant is directed to prepare an order consistent with this opinion.

**Signed on November 30, 2015**

                                        **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**